# EXHIBIT "F"

DuaneMorris[*]

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
PALO ALTO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

THOMAS W. OSTRANDER
DIRECT DIAL: +1 215 979 1802
PERSONAL FAX: +1 215 689 3639
E-MAIL: ostrander@duanemorris.com

www.duanemorris.com

June 26, 2013

Vincent J. Fumo
c/o Mark E. Cedrone
Law Offices of Mark E. Cedrone, P.C.
123 S. Broad St., Suite 810
Philadelphia, PA  19109

## Background

    I am a partner in the law firm of Duane Morris LLP. The focus of my practice for more than 30 years has been the representation of individuals and entities in civil and criminal tax controversies.  I am an attorney licensed to practice law in the Commonwealth of Pennsylvania since 1978. I am a graduate of Temple University School of Law (J.D.) and New York University School of Law (LL. M. Taxation).  My curriculum vitae is attached as Exhibit A.  I am a member in good standing of the bars of the Supreme Court of the Commonwealth of Pennsylvania, the Supreme Curt of the United States, the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States Court of Claims and the United States Tax Court.

    I have been asked by your counsel to render my opinion concerning the following:

Exhibit "F"

DuaneMorris

Vincent J. Fumo
June 26, 2013
Page 2

I.     Issue

Whether the alleged transfers of real estate and cash by Vincent Fumo to
his son and fiancée, respectively, prejudice or render ineffectual collection
of tax alleged to be due the Internal Revenue Service ("the IRS")?

II.    Facts

        The following facts have been derived from the Complaint and
accompanying exhibits filed in Vincent J. Fumo v. United States, No. 13-
3313 United States District Court, Eastern District of Pennsylvania.

        In March 2009, Vincent J. Fumo ("Fumo") was convicted of
numerous violations of certain federal statutes.  Complaint at paragraph
("Compl. Para.") 7 and at Exhibit 1 (Notice of Jeopardy Assessment,
Narrative page 1). In July 2009, the district court sentenced Fumo to a term
of imprisonment and ordered him to pay restitution, a fine and a special
assessment. The foregoing financial sanctions totaled approximately $2.7
million. Compl. Para. 12 – 14  The prosecution appealed the sentence and in
November 2011 on remand from the court of appeals, the district court
increased the term of imprisonment and increased the amount of
restitution by approximately $1.1 million. The prosecution appealed a
portion of the restitution order and Fumo is awaiting resentencing on that
issue. Compl. Para.  20 – 22.  Between funds collected by the government
from Fumo and amounts paid into court by Fumo, he has paid more than
$4 toward the court-ordered financial sanction. Compl. Para. 23 and
Exhibit 1, Narrative fn 1.

        In October 2012, the IRS issued proposed income tax adjustments to
Fumo's 2001 through 2005 federal income tax returns. Compl. Para 25. No
administrative examination preceded this adjustment. Id.  In December
2012, Fumo objected to the proposed adjustment by filing a protest with
the IRS Office of Appeals. Compl. Para.29 – 30.

        On March, 21 2013, the IRS issued notices of jeopardy assessment
and right of appeal ("NJA") against Fumo for income tax for the years 2001
through 2005, for excise tax for the years 2002 through 2004  and for gift
tax for the year 2009. Complaint exhibits 1,2 and 3.  On the same day, the

# DuaneMorris

Vincent J. Fumo
June 26, 2013
Page 3

IRS issued notices of jeopardy levy and right of appeal with regard to the foregoing jeopardy assessments and served the notice on a variety of financial institutions at which Fumo apparently had accounts. The notices of levy stated a total tax liability due of approximately $3 million. Compl. Para 36 and Exhibits 4,5 and 6.

Each of the NJAs stated in part:

> Under section 6861, and 7429 of the Internal Revenue Code, you are notified that I have found that you are, or appear to be, placing property beyond the reach of the Government, by concealing it, dissipating it, or transferring it to others, thereby tending to prejudice or render ineffectual collection of ... tax ...

Complaint, Exhibit 1 page 1

> Among the facts asserted in the NJAs as supporting the jeopardy assessment was that Fumo had "...encumbered title to [his] property by transferring it for nominal consideration to individuals with whom [he] share[d] a close or familial relationship..." Complaint Exhibit 1 page 2.

The Narrative attached to each NJA recited that Fumo had transferred real property and cash. Complaint Exhibit 1, Narrative.

As to the real property, the Narrative recited that since his indictment, Fumo had transferred one-half interests or full interests in all the properties he owned to his son (Vincent E. Fumo II) or his girlfriend/fiancée (Carolyn Zinni) and that all of the transfers were for less than full, fair and adequate consideration. Further, the Narrative alleged that Fumo had encumbered property located on Green St. in Philadelphia in the amount of $1.4 million in January 2010. The Narrative included the following chart reflecting property transfers:

| Address | Owner | Market Value | Transfer/ Consideration |
|---|---|---|---|
| 1831 Passyunk Ave. Philadelphia, PA | Gary & Susan Tavella | $235,000.00 | Property sold on 6/12/2008 |

DM3\2587693.1

DuaneMorris

Vincent J. Fumo
June 26, 2013
Page 4

| | | | |
|---|---|---|---|
| 1936-38-40 South 13th St., Philadelphia, PA | TP and Son (JTw/ROS) | $130,000.00 | Property transferred on 12/16/2008 for $1.00 |
| 6601 Monmouth Ave., Units A/D/E, Ventnor, NJ | TP and Son (JTw/ROS) | $525,000.00 | Property transferred on 10/12/2011 for $10.00 |
| 108 Kenyon Ave. Margate, NJ | TP and Fiancee (JTw/ROS) | $1,100,000.00 | Property transferred on 10/12/2011 for $10.00 |
| 30 Fiesta Way Ft. Lauderdale, FL | TP and Fiancee (JTw/ROS) | | Property transferred on 10/18/2011 for $10.00 |
| 670 River Road Halifax, PA | Fiancee | $337,552.00 | Property transferred on 10/18/2011 for $1.00 |
| 2220 Green Street Philadelphia, PA | TP and Son (JTw/ROS) | $3,000,000.00 | Property transferred on 2/21/12 for $10.00 |
| 30 Fiesta Way Ft. Lauderdale, FL | Michael & Susan Lewis | $2,325,000.00 | Property sold on 4/6/12 |

On the same date as the NJAs were issued, the IRS filed two notices of federal tax lien. Complaint Exhibit 10. The notices of federal tax lien state that the "Name of Taxpayer" is "Carolyn Zinni as nominee of Vincent J. Fumo for the property located at 108 Kenyon Ave Margate NJ" and (in a separate notice) "for the property at 670 River Rd, Halifax, PA." The notices of federal tax lien were filed with the Office of the County Clerk, Atlantic, Mays Landing NJ 08330 and the Prothonotary of Dauphin County, Harrisburg, PA 17108.

In addition, on May 21, 2013, the IRS filed notices of federal tax lien against Fumo and against his son, as Fumo's nominee, for the jeopardy assessments for income, excise and gift tax. The notices were filed with the Prothonotary of Philadelphia County, Philadelphia, PA 19130.

As to cash transfers, the Narrative recited:

The Service received information indicating that within a little over one month after sentencing, on or about the end of August 2009 through the end of January 2010, Fumo made a series of large dollar

Vincent J. Fumo
June 26, 2013
Page 5

transfers to his son's....bank account for no known purpose.  It was reported that Fumo and son were engaging in a suspicious movement of funds between banks in order to hide their original source in a manner indicative of layering.  The total dollar amount involved was $2,793,500. In addition, the son subsequently transferred some of this money (approximately $1,427,500) to another bank, solely in the son's name.

Complaint, Exhibit 1 Narrative page 2.

The Narrative contained no schedule of the alleged transfers revealing the amount and date of each transfer, the bank from which the transfers were made, the bank to which the transfer were made, the source of the information the IRS received regarding the transfers or why the transfers were characterized as "suspicious."

The Narrative asserted that the jeopardy assessment for income taxes was based upon "the evidence established during the three month criminal trial" and on "...[Fumo's] fraudulent failure to report the benefits he received from defrauding the Senate of the Commonwealth of Pennsylvania and Citizens Alliance for Better Neighborhoods"  The Narrative contained no description of the items (presumable the value of the "benefits") that made up the adjustment to Fumo's returns but did state the amount of additional tax, penalty and interest that was assessed.

As to the jeopardy assessment for excise tax, the Narrative asserted that based on Fumo's conviction, the Service had determined that he received "excess benefits" from Citizens Alliance for Better Neighborhoods for the years 2002 through 2004.   No schedule of the "excess benefits" is contained in the Narrative. The excise tax and related penalty was imposed under Internal Revenue Code ("IRC" or "the Code") sections 4958 and 6651.

As to the jeopardy assessment for gift taxes , the Narrative asserts that

...almost immediately after his conviction in 2009, information was provided to the Service that established that Fumo transferred a total

Vincent J. Fumo
June 26, 2013
Page 6

of $920,000 from a bank account he held jointly with his son to an account held solely in his son's name. Based upon (1) the inequality in their known income and wealth; (2) the use of the joint account to pay Fumo's criminal defense attorney fees; (3) the known deposits to the account being solely attributable to Fumo, the Service concluded that the $920,000 cash transfer to his son's account was a taxable gift.

Narrative at page 4.

Fumo requested an administrative review of the NJAs and associated levies which was denied in June 2013. Complaint Exhibit 9.

III.  Law

IRS Assessment and Tax Collection Procedures

Generally, the IRS starts the assessment process with the examination of the taxpayer's federal income tax. An "assessment" is the term used to describe the recording a taxpayer's name, address and tax liability on the IRS's books of account. IRC sections 6202 and 6203. The fact of an assessment is important for a number of reasons, most prominently that except in the rarest of circumstances, the IRS may not administratively collect a tax liability without first assessing a tax. IRC sections 6320 *et seq.* and 6330 et *seq.*

Once the examining agent has completed the examination and determined the proposed adjustments to the return, the taxpayer, if dissatisfied with the adjustments, may have a conference with the examiner's supervisor. Alternative dispute resolution procedures are available to resolve examination issues. See *e.g.* Rev. Proc. 2003-41, 2003-25 I.R.B. 1047 (regarding Fast Track Mediation)

If the examination process does not result in a final resolution, the taxpayer may "protest" the adjustments to the IRS Appeals Office ("Appeals"). There an experienced IRS appeals officer independently reviews the matter. The taxpayer may present argument disputing the adjustments and may be represented by counsel (as is also the case in an

DuaneMorris

examination). Appeals also provides for alternative dispute resolution procedures to conclude the matter. See *e.g.* Rev. Proc. 2009 – 44, 2009 I.R.B. 462 (regarding Appeals mediation). Most matters referred to Appeals are resolved through settlement.

If the matter is not resolved at Appeals, the IRS issues a notice of proposed deficiency, setting forth the proposed adjustments and the associated tax liability and penalties, if asserted. At this point the taxpayer may challenge the proposed adjustments in court. Typically the court of choice is the United States Tax Court since there is no need to pay the tax before challenging it. Some taxpayers choose to pay the tax, file a claim for refund and if that is not successful, file suit for refund in federal district court or the Court of Federal Claims.

Up to this point in the process, no assessment of the proposed tax may be made and no collection of the proposed tax is authorized.

In the tax refund context, an assessment is made when the tax is paid and is contemporaneously recorded as satisfied on the books of the IRS. Under these circumstances there is generally no need for the IRS to engage in any collection activity.

Where the taxpayer disputes the case in Tax Court, no assessment may be made until the decision of the Tax Court is final. IRC section 6213

Once an assessment is made[1], the IRS may collect the tax liability but only after notice and demand for payment and an opportunity to pay the tax is given to the taxpayer. IRC section 6303. Even after the notice and demand for payment is provided and the taxpayer does not pay the liability, the IRS still may not unilaterally collect the tax (for instance through levy of

---

[1] In almost all cases, the IRS first assesses a tax liability before attempting to collect it. However, section 6501(a) authorizes a suit to collect the general liability for taxes without first assessing the tax liability. "[N]o proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period (3 years after the return was filed)." *United States v. Matzner*, 79 AFTR 2d 97-2351(S.D. Fl. 1997).

Vincent J. Fumo
June 26, 2013
Page 8

the taxpayer's assets such as a bank account or wages). The IRS must first send a series of notices culminating in a final notice of intent to levy and advising the taxpayer of the right to what is referred to as a "Collection Due Process Hearing" ("CDP Hearing"). IRC section 6330.

If the taxpayer timely requests a CDP Hearing the IRS may not take collection action until the hearing is conducted and if a satisfactory result is not reached, until an appeals officer has made a final determination. That final determination may be appealed to the United States Tax Court and until the decision of the Tax Court is final, no collection action may be taken. IRC section 6330(e). Frequently, the CDP Hearing process results in the taxpayer and the IRS reaching an agreement to pay the tax liability through an installment agreement or an offer in compromise. If the CDP Hearing process does not end in agreement and the Tax Court affirms the IRS's decision not to enter into an agreement to pay the liability, the IRS may collect the tax liability.

The IRS has available a large arsenal of options to collect an outstanding tax liability directly from the taxpayer and from certain third parties.

<u>Collection of the Tax Liability Directly From the Taxpayer</u>

After assessment of the tax, the IRS may file a notice of federal tax lien. The scope of the federal tax lien is extremely broad and encumbers all "property and rights to property, whether real or personal, belonging..."to the taxpayer. IRC section 6321. The IRS may levy (seize) the taxpayer's assets or interests in assets. These are all administrative remedies that do not need court authorization.

There is a 10-year statute of limitations for collection of tax from the date of assessment. IRC section 6502. If the 10 year statute is soon to expire, the IRS may institute a suit to reduce the tax assessment to judgment to obtain an extension on the time for collection of the tax liability. Code sec. 7402. The judgment extends the federal tax lien and the related administrative enforcement remedies. The statute of limitations

Vincent J. Fumo
June 26, 2013
Page 9

requires only that the suit be instituted within the 10-year period. In addition, the 10-year period itself is subject to extension.

A lien foreclosure suit to enforce a federal tax lien is authorized by Code sections 7401 and 7403. The lien foreclosure suit under section 7403 establishes the IRS's interest in the property before the sale of that interest. Lien foreclosure suits are common in situations involving joint tenant interests. The district court has the right under section 7403(c) to adjudicate all matters and claims associated with the property and to determine the merits and priorities of all interests in and liens against the property. If the tax claim has been reduced to judgment in a previous judicial proceeding, the IRS's suit to foreclose on any particular interest in the taxpayer's property may be brought at any time during which the judgment remains in effect.

Section 7403(d) provides that the United States may bring suit to establish a receivership for the taxpayer's assets. A receiver is frequently appointed where there is either a substantial liability or a threat that the taxpayer's assets will be dissipated. The IRS may also request that the court appoint a receiver as a way to bring hard-to-reach assets within the jurisdiction of the court.

The district court has authority to issue a writ of *ne exeat republica* to stop a taxpayer from leaving the United States . The writ may be issued if: (1) the taxpayer is planning to leave the United States; (2) the taxpayer has conveyed property; or (3) the taxpayer has concealed property in order to remove it from the United States.

<u>Collection of the Tax Liability Directly From Third Parties</u>

Occasionally a taxpayer may try to defeat the IRS's efforts to collect a tax liability by transferring assets to third parties . This is rarely effective. Various remedies are available to the IRS to reach these transferred assets including the following:

$$\mathrm{D}\mathrm{uane}\mathrm{M}\mathrm{orris}$$

Vincent J. Fumo
June 26, 2013
Page 10

(1) "transferee" liability, occurs where the taxpayer at one time held title to property but has attempted to move the property beyond the reach of the IRS by means of an actual transfer;

(2) "nominee" liability arises in the situation where the taxpayer attempts to defeat collection by placing legal title to the property in a corporation, entity or individual who is essentially the taxpayer's agent;

There is no substantive federal law concerning transferee liability. State law is relied upon to determine whether a transferee situation exists. The laws of each state vary as to the applicable fraudulent transfer provisions. However, most state laws are based on the Uniform Fraudulent Transfer Act (UFTA). The UFTA provides three theories for asserting transferee liability or for setting aside fraudulent transfers: (1) actual fraud; (2) constructive fraud; and (3) transfers in contemplation of insolvency.

Under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), "[o]nce [a] creditor establishes the existence of a fraudulent transfer or obligation, the creditor may, inter alia, avoid the transfer or obligation, attach the transferred assets or other property of the transferee, obtain an injunction barring further transfers, or seek the appointment of a receiver over the transferred asset." *K-B Bldg. Co. v Sheesley Constr., Inc.*, 833 A.2d 1132, 1135 36, 2003 PA Super 372) and *United States v. Rocky Mt. Holdings, Inc.*, 782 F. Supp. 2d 106, 125 (E.D. Pa. 2011). A transferor's creditor may avoid a fraudulent transfer "to the extent necessary to satisfy the creditor's claim." 12 Pa. Cons. Stat. § 5107(a)(1).

PUFTA's only apparent limitation on such claims is that they be restricted "to the value of the asset transferred, subject to adjustment as the equities may require." Id. § 5108(c); see also *De West Realty Corp. v. IRS*, 418 F.Supp. 1274, 1279 [38 AFTR 2d 76-5685] (S.D.N.Y.1976) (interpreting identical fraudulent transfer statute as limiting "judgment against any transferee to whom [a] debtor has transferred the property up to the value of the property, but not exceeding the amount of the creditor's claim"); *LeBeau v. Comm'r*, 63 T.C.M. (CCH) 3177 ("The amount of the transferee's liability is limited to the lesser amount of the transferor's liabilities or the

DM3\2587693.1

Vincent J. Fumo
June 26, 2013
Page 11

amount transferred to the transferee, plus any allowable interest.") (citing *Yagoda v. Commissioner*, 39 T.C. 170, 185, 1962 WL 1366 (1962), aff'd 331 F.2d 485 [13 AFTR 2d 1403] (2d Cir. 1964)).

Where the transferor's creditor is the IRS, calculation of interest on the tax liability will depend on whether the value of the transferred asset(s) exceeds the tax liability. "[W]here . . . the value of the asset exceeds the total judgment sought," it is "well-settled that federal law — not state law — determines statutory additions and pre-judgment interest on unpaid federal tax liabilities." *United States v. Rocky Mt. Holdings, Inc.*, 782 F. Supp. 2d 106, 125 (E.D. Pa. 2011).

By contrast, "where the transferred assets are insufficient to pay the transferor's total liability, interest is not assessed against the deficiencies because the transferee's liability for such deficiencies is limited to the amount actually transferred to him.  Consequently, in the case of insufficient assets, interest may be charged against the transferee only for the use of the transferred assets, and since this involves the extent of transferee liability, it is determined by State law." Id.  See also *United States v. Holmes*, 2011 U.S. Dist. LEXIS 34346 (D. Colo. 2011) ("If the transferee receives less than the transferor's tax liability, state law determines the calculation of interest.")

Charging the transferee for use of the property (it would technically not be "interest on the tax liability") would be at the statutory rate of interest. The statutory rate of interest in Pennsylvania is six percent per annum. 41 P.S. § 202. Indeed, in *Tiab Communs. Corp. v. Keymarket of Nepa, Inc.*, 263 F. Supp. 2d 925 (M.D. Pa. 2003), the court awarded the plaintiff prejudgment interest in the amount of six percent per annum against a transferee who had received a preferential transfer. The court reasoned that the transferee had been unjustly enriched and that "prejudgment interest would compensate [the plaintiff] for the time-value of money."

Nominee liability arises where property to which one person holds legal title may be subjected to collection of the taxpayer's liabilities without the IRS having to resort to fraudulent conveyance remedies. When the

Vincent J. Fumo
June 26, 2013
Page 12

**DuaneMorris**

taxpayer transfers title to property to a third party or the third party acquires title to property in circumstances that indicate that the title holder may be considered to be the taxpayer's agent, the IRS may treat the title holder as a "nominee." In these nominee situations, the federal tax lien against the taxpayer is treated as if it attaches to the property held by the nominee (to the extent of the taxpayer's interest), and a notice of tax lien may be filed identifying the legal title holder as a nominee of the taxpayer. The nominee lien may be enforced administratively by levy on the property or by a lien enforcement action. Courts have considered various factors in determining whether a party is the nominee of a taxpayer including:

- Whether the party has paid adequate consideration for the property;

- Whether the property is transferred in anticipation of a lawsuit or other liability while the taxpayer retains control over the property;

- The relationship between the party/transferee and the taxpayer;

- Whether the transfer has been recorded;

- Whether the taxpayer retains possession of the property; and

- Whether the taxpayer continues to enjoy the benefits of the property.

Finally, apropos to the instant situation, where property is allegedly transferred by gift the taxpayer/donor is primarily responsible for the gift tax liability associated with the transfer. However, if the gift tax is unpaid the donee is secondarily personally liable for the tax, thereby exposing the donee's personal assets to the IRS.

As can be seen from the above, the IRS has a formidable arsenal of weapons to collect a tax liability before assessment and after assessment, against the taxpayer directly or against third parties.

<u>Jeopardy Assessment and Levy</u>

Other than the highly unusual circumstance of a suit to collect a tax liability before assessment under Code section 6501(a), a jeopardy

DuaneMorris

Vincent J. Fumo
June 26, 2013
Page 13

assessment/levy is the only other vehicle for completely disregarding all the procedural safeguards Congress has in place to protect taxpayers from improper assessment and collection. Under the limited circumstances applicable to jeopardy assessments, the IRS may assess a tax liability without an examination, without any consideration by the IRS Appeals office and without recourse to a court . Once that assessment is in place, the jeopardy levy procedures permit the IRS to side-step the collection procedural safeguards legislated by the IRS Restructuring and Reform Act of 1998 and may collect the tax by administrative levy.

Jeopardy assessments are permitted only where the IRS obtains information to show: (i) the taxpayer is or appears to be designing quickly to depart from the United States; (ii) the taxpayer is or appears to be designing quickly to place his or her or its property beyond the reach of the IRS either by removing it from the United States, by dissipating it, or by transferring it to other persons; (iii) the taxpayer's financial solvency is or appears to be imperiled (other than by virtue of the accrual of the proposed assessment); or (iv) the taxpayer is found in possession of cash or its equivalent in excess of $10,000 and claims such cash is not his or hers and that it belongs to another taxpayer that the IRS cannot identify. IRS Policy Statement P-4-88 at IRM 1. 2.13.1.27 (1-6-99), and IRS Policy Statement P-4-89 at IRM 1.2.13.1.28 (1-6-99).Reg. Sec. 301.6861-1(a) and 301.6851-1(a)(1)(i),(ii) and (iii).

IV.   Analysis

For purposes of analysis, I do not opine whether : (1) the tax liability is correct and is properly assessable and (2) these transfers actually occurred.

Under the facts set forth above, how, if at all, do the alleged transfers of real estate and cash by Fumo to his son and fiancée, respectively, prejudice or render ineffectual collection of tax alleged to be due the Internal Revenue Service? Or, as suggested by the regulations, have these transfers placed Fumo's property "beyond the reach of the Government"?

Vincent J. Fumo
June 26, 2013
Page 14

DuaneMorris

Without question, the jeopardy assessment/levy process permits the IRS to accelerate the assessment and collection process. Beyond that, this expedited procedure provides little additional benefit to the IRS.

In the ordinary course, once an assessment is made and the taxpayer is afforded his/her due process rights, a notice of federal tax lien is filed effectively tying up the taxpayer's ability to dispose of the property. Most persons acquiring property owned by a delinquent taxpayer against whom a notice of federal tax lien has been filed, acquire the property subject to the lien, thereby continuing to make the property available to satisfy the tax debt. In the limited circumstances where the lien does not attach (IRC section 6323), the taxpayer has typically received adequate consideration for the property and that consideration would be encumber by the lien making it available to the IRS to satisfy the tax liability.

In the normal course of the collection process, property titled in the taxpayer's name (financial accounts, automobiles, real estate, etc.) can be administratively seized without the need to secure an order from a court.

If Fumo had undergone a "normal" IRS examination resulting in a "normal" assessment and failed to pay his tax liability, the IRS would file a lien, tie up all his assets and seize any asset in Fumo's name. The jeopardy assessment and levy permit the IRS to accelerate this process and side step the Congressionally mandated examination, appeal, judicial and collection due process proceedings. In the end however, the assessment, be it a "normal" or a "jeopardy" assessment, and the associated lien attaches to the same property.

If Fumo, before or during the assessment/collection due process proceedings, transferred property in an effort to defeat the collection of the tax liability (as the IRS suggests he is doing here) numerous remedies are available to the IRS to collect the tax. If the IRS is able to meet the standards for applying the transferee or nominee theories for reaching taxpayer's property in the hands of third parties, there would be no prejudice to collecting the tax. The real estate transferred by Fumo[2] would

---

[2] The Narrative refers to a mortgage Fumo placed on his Green St. property in Philadelphia as a real property transfer. As stated in the Complaint, almost all the

Vincent J. Fumo
June 26, 2013
Page 15

be as available to satisfy the tax liability as it would be if it continued to be titled in his name. As to the cash transfers, the recipient of the cash, in this case Fumo's son, is known to the government and back records create a paper trail of the transfer of funds from Fumo's accounts to those of his son. Those very same bank records should show how the funds in the account are dispensed, for instance, to third parties to pay bills. If after a "normal" examination, Fumo did not pay the assessed tax liability, the IRS could use any of the foregoing third party liability theories to seize property held in the son's hands.

Paradoxically, these theories actually expand the universe of assets available to the IRS to collect the tax liability.

For instance, here the IRS alleges that Fumo transferred to his girlfriend (Ms. Zinni) an interest in certain real property. The property had apparently been owned solely by Fumo but is now titled in his and his girlfriend's names as joint tenants with right of survivorship.

Under the PUFTA, the IRS, if able to prove that the transfer was fraudulent, can among other things, avoid the transfer or attach the transferred assets or other property of the transferee. *United States v. Rocky Mt. Holdings, Inc.*, 782 F. Supp. 2d 106, 125 (E.D. Pa. 2011). Ms. Zinni's interest in the property could be voided thereby making Fumo the sole owner of record which in turn would make the entire property subject to the IRS' claim. Alternatively, the IRS could attach Ms. Zinni's personal assets (other than the real property Fumo transferred) to satisfy its tax claim. Consequently, if the PUFTA applies to the real estate transferred to

---

proceeds of that mortgage were used to return to a retirement account within the time frame necessary to avoid adverse tax consequences, funds that were withdrawn from the retirement account and used to pay Fumo's court-ordered financial obligations. Complaint Exhibit 7, page 11. Consequently, this encumbrance did not place the asset beyond the reach of the Government, since almost all the proceeds of the loan were used to repay a withdraw from a retirement fund. That very same retirement fund and the Green St property are not exempt from the reach of the IRS levy power. IRC section 6334

DuaneMorris

Vincent J. Fumo
June 26, 2013
Page 16

Zinni, not only is the transfer of the property voidable, the IRS could instead chose to attach both the transferred property or Zinni's other property to satisfy the tax liability.

Theoretically, Zinni could be financially responsible for more that the value of the property transferred to her. If the value of the property transferred to Zinni was less than the tax liability, her obligation to the IRS would be limited to that value except that a court could award the IRS damages for her use of the property measured by the statutory rate of interest of six percent. That could amount to more than the value of the property transferred. If the value of the property was more than the tax liability, Zinni would be at risk for the tax liability and accruing interest.

If the transfer were voided but the value of the property had declined during her use, Ms. Zinni would arguably be liable for that diminution in value. *Miller v. Kaiser*, 164 Colo. 206 (1967) (interpreting an analogous fraudulent transfer statute).

As to the alleged gift of $920,000 to Fumo's son, he runs the same risks as Zinni. Finally, although not capturing all the transferred cash, the son would be personally liable for the gift tax liability, if Fumo did not pay the gift tax.

DM3\2587693.1

DuaneMorris

Vincent J. Fumo
June 26, 2013
Page 17

V.      Conclusion

Based on the foregoing, it is my opinion that although the IRS collection process is indeed accelerated by way of the jeopardy assessment/levy procedure, the "normal" collection remedies available to the IRS both pre and post assessment, provide the IRS in this case with sufficiently powerful collection tools such that the referenced transfers of real estate and cash do not substantially prejudice or render ineffectual the collection of any tax owed by Fumo. Given the reach of these collection devices, the transferred property is not "beyond the reach of the Government".

Sincerely,

Thomas W. Ostrander

TWO:cpw

Duane Morris LLP - Thomas W. Ostrander, Partner - Profile

 

**THOMAS W. OSTRANDER**
Partner
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
USA

Phone: +1 215 979 1802
Fax: +1 215 689 3639
Email: Ostrander@duanemorris.com

Thomas W. Ostrander represents individuals and entities in complex matters primarily involving disputes with the Internal Revenue Service including examinations, appeals, litigation and collections. He also defends individuals charged with wrongdoing by government entities both federal and state. In addition, he defends and prosecutes civil professional malpractice matters involving accountant and attorney negligence.

He is a member of the Criminal Justice Section and the Committee on Criminal and Civil Tax Penalties of the Taxation Section of the American Bar Association, the Criminal Law and Tax Law sections of the Pennsylvania Bar Association, the Tax Section of the Philadelphia Bar Association and the National Association of Criminal Defense Lawyers.

Mr. Ostrander is a graduate of New York University School of Law (LL.M., taxation), a graduate of Temple University School of Law and a graduate of Villanova University.

Areas of Practice

- Tax
- Civil and Criminal Tax Controversies
- White Collar Criminal Defense
- IRS Voluntary Disclosures
- Defense of Professional (attorney and accountant) Malpractice
- Responsible Officer/Trust Fund Recovery Penalty
- Offers in Compromise
- Installment Agreements
- IRS Collection Matters
- Worker Reclassification
- Tax Return Preparer Penalty
- Fraud, Negligence and Accuracy Related Penalties
- Employment Tax Liabilities
- Tax Shelters
- Family Limited Partnerships
- Federal Tax Liens and Levies
- Audits and Appeals
- United States Tax Court Litigation
- Refund Claims, Appeals and Litigation
- Innocent Spouse
- Tax Planning and Litigation
- Deductibility of Litigation Expenses
- Transferee Liability
- IRS Criminal Investigations

Duane Morris LLP - Thomas W. Ostrander, Partner - Profile

- Grand Jury Subpoenas
- IRS Summons

Representative Matters

- Represented a director of tax and finance of a public company in negotiating a criminal disposition based upon failure to file or pay New York City income tax since 2000 from a potential seven-year term of incarceration down to payment of back taxes and a fine, along with community service.
- In *Robinson v. United States*, the Third Circuit in a case of first impression established the taxpayer's right to challenge an IRS lien under the "quiet title" provisions of the United States Code. Traditionally such an attack on liens had been viewed as an impermissible challenge to the underlying tax deficiency. Mr. Ostrander, acting as lead counsel, convinced the court that an exception should apply when the Internal Revenue Service failed to comply with its own rules in filing a federal tax lien.
- In *Tinsley v. Commissioner*, Mr. Ostrander acting as lead counsel convinced the Tax Court that the Internal Revenue Service's position regarding tax deficiencies owed by a CPA were not justified and was successful in having the Court award the taxpayer the attorney fees he incurred in disputing the IRS action.
- In *Botsaris v. Commissioner*, Mr. Ostrander was successful in obtaining innocent spouse status relief for his client, relieving the taxpayer of liability for underreported income on a joint federal income tax return.
- In *Bellis v. Commissioner*, Mr. Ostrander, serving as co-counsel, was successful in asserting a claim that the statute of limitations barred the assessment of any tax liability.
- In *Estate of Anne Marie Fahey v. Thomas Capano*, Mr. Ostrander represented the family and the estate of the victim in this high profile murder case. He was involved in all aspects of the representation from the initial phases of the investigation of the crime through the conviction of the accused at trial. He prosecuted a civil action against the murderer, his co-conspirators and their corporations which resulted in a significant monetary settlement.
- Mr. Ostrander successfully represented a partner in a major accounting firm in an Internal Revenue Service criminal investigation arising out of the accounting firm's former client's prosecution for income tax evasion. The representation resulted in a declination of the proposed criminal prosecution of the partner. This representation was followed by the successful defense of the partner and the accounting firm in a professional malpractice action commenced by the former client.

Professional Activities

- American Bar Association
  - Criminal Justice Section
  - Taxation Section
  - Criminal and Civil Tax Penalties Committee
- Pennsylvania Bar Association
  - Criminal Law Section
  - Tax Law Section
- Philadelphia Bar Association
  - Tax Section
- National Association of Criminal Defense Lawyers
- Participant, Internal Revenue Service's Internal Continuing Professional Education Program for Revenue Officers, July 16, 1997

Admissions

- Pennsylvania
- U.S. Court of Appeals for the Third Circuit
- U.S. Tax Court
- U.S. Court of Claims
- Supreme Court of the United States
- U.S. District Court for the Eastern District of Pennsylvania
- Supreme Court of Pennsylvania

Education

- New York University School of Law, LL.M. Taxation
- Temple University School of Law, J.D.

Experience

- Duane Morris LLP
  - Partner, 1986-present

Duane Morris LLP - Thomas W. Ostrander, Partner · Profile

- Associate, 1978-1985

Honors and Awards

- Listed in Pennsylvania Super Lawyers, 2004, 2011-2012
- AV® Preeminent™ Peer Review Rated by Martindale-Hubbell

AV® Preeminent™ and BV® Distinguished™ are certification marks of Reed Elsevier Properties Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.

Selected Publications

- "2012 Offshore Voluntary Disclosure Program FAQs and Compliance Plan for U.S. Citizens Residing Overseas," *Duane Morris Alert*, July 11, 2012
- "New 2012 Offshore Voluntary Disclosure Program; Taxpayer Advocate Criticizes IRS "Bait & Switch"; Current Offshore Enforcement Initiatives," *Duane Morris Alert*, January 24, 2012
- "HSBC India Accounts Sought by IRS: Time Running Out for IRS Voluntary Disclosure by HSBC India Customers," *Duane Morris Alert*, April 13, 2011
- "IRS Voluntary Disclosure "Penalty Framework" for Offshore Accounts," *Duane Morris Alert*, March 31, 2011
- "IRS Announces New Voluntary Disclosure Program with Translations in Eight Languages," *Duane Morris Alert*, March 31, 2011
- "IRS Voluntary Disclosure Practice Update," *Duane Morris Alert*, March 8, 2010
- "U.S. Indicts Four Credit Suisse Bankers in Increasing Crackdown on Offshore Accounts: Time for Voluntary Disclosure Running Out," *Duane Morris Alert*, February 25, 2011
- "Final Rules to Amend the Bank Secrecy Act Regulations Regarding Reports of Foreign Financial Accounts (FBARs)," *Duane Morris Alert*, February 25, 2011
- "IRS Announces New Voluntary Disclosure Program," *Duane Morris Alert*, February 9, 2011
- "Criteria for Disclosure of Swiss Accounts Announced; Now That the Offshore IRS Voluntary Disclosure Program Has Ended, What's a Taxpayer to Do?" *Duane Morris Alert*, November 24, 2009
- Co-author, "U.S. Accounts to Be Disclosed Under U.S.-Swiss Settlement Agreement," *Practical US/International Tax Strategies*, September 15, 2009
- "IRS Voluntary Disclosure Program Update," *Duane Morris Alert*, August 28, 2009
- "IRS Announces Voluntary Disclosure Program Affecting U.S. Persons with Offshore Financial Accounts," *Duane Morris Alert*, March 27, 2009
- "The Offshore Credit Card and Financial Arrangement Probe: Fraught With Danger for Taxpayers," *Journal of Taxation*, August 2003
- Co-author, "Counsel Interaction with Government Agencies and Fiscal Intermediaries," Health Care Dispute Resolution Manual: Techniques for Avoiding Litigation, December 2001

Selected Speaking Engagements

- "Foreign Bank Account Reporting," Pennsylvania Institute of Certified Public Accountants - Greater Philadelphia Chapter Federal Tax Committee, February 2012
- "Current Developments in IRS Civil & Criminal Tax Matters," Pennsylvania Institute of Certified Public Accountants - Central Chapter Annual Tax Conference, November 2011
- "FBARs for Local Practitioners," Pennsylvania Institute of Certified Public Accountants, Greater Philadelphia Chapter Annual Tax Forum, November 2011
- "Anti-Money Laundering Regulations in Italy and the European Union v. the USA," ALMA (Italian LLM association) 2011 Winter Meeting, January 27, 2011
- "IRS Practices and Procedures," Pennsylvania Institute of Certified Public Accountants, Central Chapter Annual Tax Conference, November 18, 2010
- "IRS Enforcement Initiatives: Planning and Coping Strategies for Accountants and Their Clients with International Activities," Pennsylvania Institute of Certified Public Accountants' Greater Philadelphia Cooperation with the Bar Committee CLE/CPE program, January 20, 2010
- "IRS Practices and Procedures," Pennsylvania Institute of Certified Public Accountants, Central Chapter Annual Tax Conference, November 19, 2009
- Speaker, STEP Pacific Rim Conference, May 7-8, 2009
- "Defending White Collar Cases - The Ultimate Heavyweight Fight," Pennsylvania Bar Institute, Pittsburgh, PA, February 12, 2009, and Philadelphia, PA, February 27, 2009
- "Update on Internal Revenue Service Practice and Procedure," Pennsylvania Institute of Certified Public Accountants, Central Chapter Annual Tax Conference, November 20, 2008
- "Update on Internal Revenue Service Practice and Procedure," Pennsylvania Institute of Certified Public Accountants, Central Chapter Annual Tax Conference, November 15, 2007
- Course Moderator and Planner, "Representing Your Client with the IRS - Appeals, Audits, Collections and Offers in

Compromise," Pennsylvania Bar Institute program, Philadelphia, Pennsylvania, April 30, 2007
- "Penalties, Abatement, Liens and Levies," Pennsylvania Institute of Certified Public Accountants, Central Chapter Annual Tax Conference, November 16, 2006
- "Representing a Client in the Tax Court," Pennsylvania Bar Institute program: Litigating in the U.S. Tax Court and Refund Forums, Philadelphia, Pennsylvania, April 11, 2006
- "IRS Practice And Procedure - Current Issues In Mediation/Arbitration, Innocent Spouse And Offers In Compromise," Pennsylvania Institute of Certified Public Accountants, Central Chapter Annual Tax Conference, November 11, 2004
- "IRS Practice And Procedure - Current Issues In Mediation/Arbitration, Innocent Spouse And Offers In Compromise," Pennsylvania Institute of Certified Public Accountants, Southwest Chapter Ninth Annual Tax Conference, December 12, 2003
- "Bond Issuers Response to an IRS Enforcement Action," Pennsylvania Association for Bond Lawyers' Annual Seminar, Harrisburg, Pennsylvania, May 22, 2003
- "Recent Developments in Civil and Criminal Tax Controversy Matters," Pennsylvania Bar Institute, Philadelphia, Pennsylvania, April 22, 2003
- "Civil and Criminal Tax Issues in Domestic Relations Matters," Did You Get Your Deal? - Enforcement and Security Issues, Pennsylvania Bar Association Family Law Section, January 22, 2000

Duane Morris LLP & Affiliates. © 1998-2012 Duane Morris LLP. Duane Morris is registered service mark of Duane Morris LLP.